CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 21 2006

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DAMEUN M. SCOTT,<br>    Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 6:05cv00010<br>) |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | )<br>) By:   Hon. Michael F. Urbanski<br>)        United States Magistrate Judge<br>) |

## REPORT AND RECOMMENDATION

Plaintiff Dameun M. Scott ("Scott") brought this action pursuant to 42 U.S.C. § 405(g) for a review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Titles II and XIV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383. This case was referred to the undersigned Magistrate Judge on May 23, 2005 for report and recommendation. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision. As the undersigned finds substantial evidence to support the determination that Scott is not disabled under the Act, it is recommended that the ALJ's decision be affirmed.

I

Plaintiff was born on March 1, 1972, and completed the ninth grade. (Administrative Record, hereinafter "R." at 13, 46, 237) Plaintiff's previous work includes that of a tree trimmer and mechanic. (R. 240) Plaintiff last worked as a skidder operator, when he was injured after falling off of a skidder truck and being subsequently run over by it. (R. 112, 240) Plaintiff filed applications for DIB and SSI on May 31, 2002 alleging he became disabled on May 23, 2002,

due to abdominal and pelvic injuries resulting from the skidder accident occurring that same day. (R. 12, 13, 79, 238) Plaintiff's claims were denied at both the initial and reconsideration levels of administrative review, (R. 12), and an administrative hearing was held before an ALJ on August 25, 2004. (R. 231-62) On October 20, 2004, the ALJ issued a decision denying plaintiff's claims for DIB and SSI, finding plaintiff retained the residual functional capacity ("RFC") to lift or carry up to ten (10) pounds occasionally, and five (5) pounds frequently; stand and walk two hours (2), and sit six (6) hours during an eight (8) hour workday, with a sit/stand option. (R. 18, 20)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on February 16, 2005, when the Appeals Council denied plaintiff's request for review. (R. 4-6) Plaintiff then filed this action challenging the Commissioner's decision.

## II

Plaintiff advances a number of arguments in support of his motion for summary judgment. First, plaintiff argues that the ALJ erred in finding plaintiff's complaints not credible. Second, plaintiff asserts that the ALJ erred by failing to properly examine the nonexertional limitations of depression and anxiety. Specifically, plaintiff contends that the ALJ's finding that he does not meet Listing 12.04 is not supported by substantial evidence, and that the ALJ failed to consider the records from Central Virginia Community Services in assessing plaintiff's nonexertional functional limitations. Finally, plaintiff alternatively requests that the court remand this case to the Commissioner for consideration of new evidence under sentence six of 42 U.S.C. § 405(g).

2

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

### III

Plaintiff first argues that the ALJ erred in finding plaintiff's allegations regarding his limitations were not totally credible. The ALJ determined that the evidence contained in the record did not "support a conclusion that the symptoms and limitations resulting form [sic] the claimant's impairments diminish his functional abilities to such an extent that all work activity would be precluded." (R. 18)

Plaintiff's assertions that the ALJ improperly weighed his credibility regarding his limitations and his ability to engage in substantial work activity are without merit. In reviewing cases for substantial evidence, courts must not undertake to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). It is well settled that credibility determinations are in the province of the ALJ, and that courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989). The ALJ is not required to accept all subjective

3

testimony at face value. See Hays, 907 F.2d at 1456. Because the ALJ had an opportunity to observe plaintiff's demeanor and to determine his credibility, his observations are to be afforded great weight. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Here, plaintiff's testimony as to his limitations was considered in the context of all of the evidence before the ALJ, and the ALJ determined that Scott's testimony was not entirely credible. (R. 18) Certainly, the ALJ recognized that plaintiff's residual functional capacity is limited as a result of his physical condition, which is evident by the ALJ's determination that plaintiff is capable of only a limited range of sedentary work with a sit/stand option. (R. 20) The evidence in the record supports the ALJ's decision that the plaintiff had the RFC to perform the jobs to which the vocational expert ("VE") testified.[1] No doctor has opined that plaintiff is totally disabled from all work, or that plaintiff must limit his daily activities any more than as outlined by the ALJ.

There is no doubt that plaintiff's accident involving the skidder truck resulted in extensive injuries. However, medical records seem to suggest that plaintiff recovered from those injuries relatively well. After surgeries to repair a ruptured bladder and fractured pelvic bone shortly after the initial injuries, plaintiff was discharged to his home on May 31, 2002 in stable condition. (R. 114, 115-19, 120-22, 129-39) In his first post-operative visit to orthopedic surgeon Thomas E. Shuler, M.D., he was told to remain non-weightbearing. (R. 166) Subsequent follow-up visits revealed no complications and allowed for accelerated physical therapy with additional weightbearing, as tolerated, bilaterally. (R. 161, 162)

---

[1] Based on the hypothetical posed by the ALJ, the VE testified that Scott could perform the jobs of security guard monitor, information clerk and bench assembler, all of which exist in sufficient numbers in the regional and national economies. (R. 259-261)

4

Scott then began physical therapy with Rehabilitation Associates of Virginia to gain strength and improve mobility. (R. 186-96) On his first visit in August, 2002, his function was determined to be at 25% capacity. (R. 195) Subsequent therapy notes reveal plaintiff progressed well. It was noted that Scott was ambulating with equal weightbearing through the lower extremities and was tolerating it well, (R. 193), that he was "progressing nicely," (R. 192), doing well with all exercises, (R. 189, 190), and gradually improving, (R. 187, 188). Plaintiff's therapy was interrupted after an abscess, formed around the right iliosacral screw in his hip, required surgery in September, 2002. (R. 140-46, 158, 160) However, plaintiff's wounds post-operation healed well and he was cleared to "full speed rehab." (R. 157)

In January, 2003, plaintiff was seen by R. Andrew Whisnant, M.D., who noted that he was weightbearing with a cane. (R. 156) Dr. Whisnant also stated that plaintiff had no complaints, and felt that his bladder was emptying well. (R. 156) On March 24, 2003 Dr. Shuler stated that plaintiff had basically reached "maximal medical improvement." (R. 197) Dr. Shuler remarked that plaintiff has chronic pain syndrome in his back, and that he could not afford to continue physical therapy because of his insurance status. (R. 197) In a medical consultative examination performed on May 19, 2003, William E. Ramsey, M.D., stated the pain resulting from plaintiff's injuries would be indefinite and would preclude him from performing heavy work like logging, but that plaintiff could possibly be "trained to do more sedentary occupations." (R. 171) Kenneth A. Powell, M.D., noted plaintiff has chronic back pain secondary to his injuries from the accident, but stated his motor strength in the lower extremities appeared normal. (R. 214-16)

The RFC assessments by state agency physicians coincide with the limitations placed on plaintiff by the ALJ. The first RFC assessment by Richard M. Surrusco, M.D., was completed on November 6, 2002 for the date twelve (12) months after the alleged disability onset, May 22, 2003. (R. 148-155) Dr. Surrusco limited plaintiff to lifting twenty (20) pounds occasionally, and ten (10) pounds frequently; standing and/or walking for at least two (2) hours in an eight (8) hour workday; and sitting for a total of about six (6) hours in an eight (8) hour workday. (R. 148)

The second RFC assessment was completed on June 5, 2003. (R. 175-181) The state agency physician limited plaintiff to lifting ten (10) pounds; standing and/or walking for a total of at least two (2) hours in an eight (8) hour workday; and sitting about six (6) hours in an eight (8) hour workday. (R. 176) The physician also noted that plaintiff's claim that he still requires use of a cane is only partially credible, and that plaintiff's ability to ambulate should be possible at least two (2) hours per day. (R. 176)

The ALJ's findings as to plaintiff's credibility are supported by substantial evidence in the record. No doctor has opined that plaintiff is limited in a greater capacity than assessed by the ALJ in his RFC determination, and the medical records support the ALJ's findings as to plaintiff's capacity. Accordingly, the ALJ's determination should be affirmed.

## IV

Plaintiff also argues that the ALJ erred by failing to properly examine plaintiff's nonexertional limitations. Plaintiff argues that medical records from Central Virginia Community Services ("CVCS") support his contention that he meets the criteria for Medical Listing 12.04.

6

In order to meet Listing 12.04, plaintiff must meet the criteria listed in both sections "A" and "B," or meet the requirements of section "C," outlined in the Listing of Impairments. 20 C.F.R. pt. 404, subpt. P, app. 1. Section "A" requires medically documented persistence, either continuous or intermittent, of either depressive syndrome, characterized by at least four specified characteristics, or manic syndrome, characterized by at least three specified characteristics. Id. Additionally, plaintiff's depressive or manic syndrome must result in at least two of the criteria outlined in section "B," indicating marked limitation in functioning as a result of a nonexertional limitation. Id. Alternatively, plaintiff's impairments may be of listing-level severity if he meets the criteria outlined in "C," including a medically documented history of a chronic affective disorder of at least two (2) years' duration, that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, as well as one of the specified characteristics. Id.

Plaintiff argues that he meets the criteria of both "A" and "B," and therefore meets Listing 12.04. Plaintiff cites records from CVCS in support of his contention that he suffers from anhedonia, appetite disturbance, sleep disturbance, and feelings of worthlessness, four of the characteristics outlined in "A." The plaintiff further argues that he meets the "B" criteria because he has marked difficulties in maintaining social functioning and persistence, as he claims are documented by the medical records.

The ALJ, however, found that plaintiff did not meet the criteria of either "A" or "B," and that there was insufficient evidence to find that plaintiff met the criteria of "C." (R. 15) The ALJ stated that the records do not indicate that plaintiff has four of the characteristics of depressive syndrome outlined in "A," or that Scott has an adjustment disorder that results in a limitation of

7

daily activities, social functioning, or concentration. (R. 15) Additionally, he has not experienced episodes of decompensation. (R. 15) According to the ALJ, no mental health professionals have reported limitations caused by plaintiff's mental impairments. (R. 15)

The ALJ's finding is supported by substantial evidence in this case. Scott made no mention of mental impairments on his disability application, nor did he complain of mental impairments to any physician prior to his visit to Central Virginia Community Services in April, 2004. CVCS case manager Ersie Thomas, B.A., C.M., met with plaintiff and noted he exhibited symptoms of adjustment disorder, chronic with mixed anxiety and depressed mood, including recurring dreams, decreased appetite and sleep disturbance, feelings of hopelessness, significant episodes of depression, and angry outbursts.[2] (R. 203) On April 23, 2004, plaintiff reported feelings of "giving up," as well as dream activity from his accident, a slight improvement in sleep maintenance, and an appetite that "comes and goes." (R. 207) However, on that date, plaintiff admitted to being non-compliant with his medications and to forgetting about his last scheduled appointment. (R. 207)

Plaintiff reported on May 25, 2004 that his prescription for Effexor made him less irritable and gave him a better attitude. (R. 206) He noted no side effects from his medication. (R. 204) Additionally, in May, 2004, plaintiff's psychiatric examination revealed only symptoms of insomnia and agitation. (R. 205) Notes indicate that Scott had appropriate affect, perceptions and thought content, and that he was cooperative, well-oriented, and had good insight. (R. 205) He was also noted to be integrated socially, not isolated or dependent. (R. 205) At his

---

[2] Plaintiff's CVCS case manager is not an acceptable medical source who can provide evidence to establish an impairment or resulting limitations under the regulations. 20 C.F.R. §§ 404.1513, 416.913.

administrative hearing, plaintiff testified that the prescription for Amitriptyline gave some relief to his insomnia. (R. 252)

These records fail to establish that plaintiff's mental impairments are of listing-level severity. While plaintiff claims to have experienced anhedonia, appetite disturbance, sleep disturbance and feelings of worthlessness, Scott's symptoms are controlled by medication. He testified at his administrative hearing that his insomnia was relieved by Amitriptyline, and has also stated that the Effexor made him less irritable and gave him a better attitude. (R. 206, 252) If a symptom can reasonably be controlled by medication or treatment, it is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). There is no evidence to indicate that plaintiff complained of, or suffered from, anhedonia, or a loss of interest in almost all activities. While plaintiff claims to have had appetite disturbance, records in May, 2004, reveal plaintiff had gained a mere five pounds since December 2, 2003. (R. 205) Additionally, when plaintiff stated he felt like giving up, he admitted to being non-compliant with his medication at the time. (R. 204)

Furthermore, there does not appear to be any evidence in the administrative record to support plaintiff's contention that a mental impairment limits Scott's ability to function. No limitations are placed on plaintiff's daily activities by physicians in the record, nor does plaintiff complain of limitations. Plaintiff was characterized in CVCS records as being cooperative, well-oriented, and having good insight. (R. 205) Scott does not appear to have any limitation in maintaining social functioning; in fact, CVCS records note that he is socially integrated. (R. 205) There is no evidence that a mental impairment limits plaintiff's concentration or persistence, or that plaintiff suffers from episodes of decompensation.

In addition, plaintiff's global assessment of functioning ("GAF") was rated at 60. (R. 203, 204, 207) The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The scale ranges from 0 to 100, with serious impairment in functioning at a score below 50, moderate difficulty in functioning at 60 or below, some functioning difficulty at 70 and below, and so forth. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994). A score of 60 indicates that an individual is on the high end of the category in which the individual exemplifies moderate symptoms or moderate difficulty in social, occupational, or school functioning. Id. This score in no way indicates plaintiff suffers from anything near a listing-level mental impairment.

The plaintiff also argues that the ALJ did not fully develop the record as to his mental impairments, and thus remand is warranted under Marsh v. Harris, 632 F.2d 296 (4th Cir. 1980). However, the Fourth Circuit in Marsh held the ALJ's performance of his duty to fully inquire into each issue is particularly important when the claimant *appears without counsel*. Id. at 299 (emphasis added). The Fourth Circuit later stated in Johns v. Sullivan, 1991 U.S. App. LEXIS 25163, at *5 (4th Cir. Oct. 28, 1991), it is well-settled that in SSI and DIB hearings, the administrative law judge has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts in a case involving an unrepresented, poorly educated, pro se claimant. Id. at *5; accord Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981).

The plaintiff in this case was represented by counsel at the administrative hearing. (R. 233) Plaintiff's attorney, Mr. Donaldson, thoroughly examined Scott at the hearing, (R. 241-258), establishing his physical limitations, daily activities, and pain level. Additionally,

10

plaintiff's counsel discussed his medications, including Amtitriptyline and Effexor, and the ALJ followed up with questions about plaintiff's visits to CVCS. (R. 251-52) Under these circumstances, it cannot be said that plaintiff was denied a fair hearing or was prejudiced in any way.

Likewise, plaintiff's argument that the Commissioner erred by failing to refer plaintiff for a consultative psychological examination lacks merit. The regulations state that the decision to purchase a consultative examination for a claimant is made after the Commissioner has given full consideration as to whether any additional information needed is readily available in the medical records provided from a claimant's treating sources. 20 C.F.R. §§ 404.1519a, 416.919a. Before purchasing a consultative examination, the Commissioner will consider not only existing medical reports, but also a claimant's disability interview form and his specific allegations as to impairments, as well as other pertinent information contained in the claimant's file. Id.

In this case, the claimant did not allege anywhere on his DIB or SSI applications that he suffered from a mental impairment. (R. 78, 218) Additionally, Scott made no mention of a mental impairment or resulting limitation to any physician for nearly two years after his alleged onset of disability. Scott first visited CVCS for a mental exam in April, 2004. While CVCS records indicate plaintiff suffers from adjustment disorder and chronic anxiety with depressed mood, case manager Thomas is not an acceptable medical source who can provide evidence as to plaintiff's mental impairment. The scant evidence of severe mental impairment contained elsewhere in the record supports the Commissioner's decision not to purchase a consultative psychological exam and instead base his decision on the medical evidence provided in the record.

11

It is ultimately the plaintiff's burden of establishing he has a mental impairment severe enough to render him unable to engage in substantial gainful employment. <u>Gross v. Heckler</u>, 785 F.2d 1163, 1165 (4th Cir. 1986). Plaintiff has failed to meet his burden of providing he has a severe, or listing-level, mental impairment in this case. Under these circumstances, the ALJ's decision is supported by substantial evidence.

## V

As an alternative to granting summary judgment in favor of plaintiff, Scott requests that the court remand this case under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence.

Sentence six authorizes the court to remand a case to the Commissioner upon a showing of new, material evidence, for which good cause can be shown for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); <u>Borders v. Heckler</u>, 777 F.2d 954, 955 (4th Cir. 1985). Sentence six applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council. (<u>See</u>, <u>e.g.</u>, Pl.'s Br. Ex. 1)

The Fourth Circuit in <u>Borders</u> held that a reviewing court may remand a case to the Commissioner on the basis of newly discovered evidence if four prerequisites are met. <u>Borders</u>, 777 F.2d at 955. First, the evidence must relate back to the time the application was first filed and it must be new, in that it cannot be merely cumulative. <u>Id.</u>; <u>see also</u> <u>Wilkins v. Sec'y, Dep't Health & Human Servs.</u>, 953 F.2d 93, 96 (4th Cir. 1991). The evidence must also be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her. <u>Borders</u>, 777 F.2d at 955. There must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner. <u>Id.</u>

12

Finally, the claimant must present to the remanding court at least a general showing of the nature of the new evidence.  Id.

Plaintiff has met the fourth step of the Borders test in this case, as plaintiff has provided the court with the evidence to be considered on remand and the court understands its nature.  See Borders, 777 F.2d at 955.  Additionally, the records presented to the court for consideration are records from Lynchburg General Hospital dated April 21, 2005, records from Virginia Commonwealth University-Medical College of Virginia dated April 19, 2005, and records from Central Virginia Community Services dated April 7, 2005 through June 7, 2005.  Because these records were not in existence at the time the ALJ and the Appeals Council issued their decisions, there is good cause shown as to why the records were not previously submitted for review.  See id.  However, Scott has not satisfied the other requirements for remand under Borders.  A sentence six remand is inappropriate in this case because the evidence presented to the court is neither new nor material.

Contrary to plaintiff's assertions, the records provided by plaintiff shed no new light on plaintiff's impairments or limitations.  The hospital records provide no new, material evidence that could reasonably be calculated to change the Commissioner's decision about plaintiff's impairments and residual functional capacity.  Furthermore, the additional CVCS records note plaintiff has maintained his GAF of 60, that he has been compliant with his medication, and that he reports no exacerbation of his symptoms.  Records also indicate that plaintiff continues to function independently in the community and that his "mental status remains the same."  These records are cumulative, and thus do not constitute new evidence as defined by Borders, 777 F.2d at 955.  This evidence would likewise not change the Commissioner's decision and therefore,

13

the evidence is not material. As none of the evidence presented to the court by the plaintiff would warrant a sentence six remand under Borders, the decision of the ALJ is affirmed.

## VI

In making this recommendation, the undersigned does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. It is recommended, therefore, that defendant's motion for summary judgment be granted.

The Clerk is directed immediately to transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

Case 6:05-cv-00010-NKM-mfu    Document 16    Filed 02/21/06    Page 14 of 15    Pageid#: 105

**ENTER:** This 21st day of February, 2006.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge